# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**HENNESSY CHRISTOF (#595808)**             **CIVIL ACTION**

**VERSUS**

**WARDEN DARREL VANNOY**                     **NO. 18-0145-SDD-SDJ**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 11, 2021.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**HENNESSY CHRISTOF (#595808)**                                        **CIVIL ACTION**

**VERSUS**

**WARDEN DARREL VANNOY**                                              **NO. 18-0145-SDD-SDJ**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before this Court is the application of Petitioner Hennessy Christof for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, Petitioner's application should be denied. There is no need for oral argument or for an evidentiary hearing.

**I.   Procedural History**

On August 12, 2010, Petitioner was indicted in the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, on one count of second degree murder and two counts of attempted second degree murder. After a jury trial in December of 2012, Petitioner was found guilty on all counts. He was sentenced on March 12, 2012, to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence for the second degree murder charge and 10 years at hard labor without the benefit of parole, probation, or suspension of sentence for each of the attempted second degree murder charges.

Petitioner filed an appeal with the First Circuit Court of Appeal, which affirmed his conviction on June 7, 2013. The Louisiana Supreme Court denied further review on February 14, 2014.

On or about June 13, 2014, Petitioner filed an application for post-conviction relief in the state trial court. On December 23, 2014, the trial court denied Petitioner's application for post-

2

conviction relief. Thereafter, Petitioner filed a writ application with the First Circuit. On September 21, 2015, the First Circuit denied the writ due to Petitioner's failure to comply with the rules of court. Thereafter, Petitioner re-filed his writ application with the First Circuit, and on February 10, 2016, the First Circuit denied review without comment. Petitioner's writ of supervisory review in the Louisiana Supreme Court was denied on June 5, 2017.

Petitioner filed the instant application for habeas relief on February 8, 2018, asserting: (1) his conviction was obtained through inadmissible "other crimes" evidence, (2) ineffective assistance of trial counsel due to trial counsel's remarks during closing arguments, and (3) ineffective assistance of trial counsel for failure to request a special jury instruction on "other crimes" evidence. On March 13, 2018, Petitioner filed "Supplement Pro Se Brief Relator Post-Conviction Relief" (R. Doc. 6), which appears to supplement his original petition for habeas corpus relief with the following additional grounds for relief: ineffective assistance of trial counsel due to trial counsel's failure to investigate the factual basis for a potential insanity plea, failure to enter a dual plea of "not guilty and not guilty by reason of insanity," and failure to challenge the admissibility of his statements to police.[1]

## II.     Timeliness

Pursuant to 28 U.S.C. § 2244(d), there is a one-year statute of limitations applicable to federal habeas corpus claims brought by prisoners in state custody. This limitations period begins to run on the date upon which the judgment becomes final through the conclusion of direct review or through the expiration of time for seeking such review.[2] If a petitioner stops the direct appeal

---

[1] R. Doc. 6 also appears to request a ruling under Louisiana's public records law for access to the district attorney's file. Such questions of state law are not appropriate for habeas corpus relief and outside of this Court's jurisdiction. *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1998). See also *Williams v. Krieder*, 1992 WL 245914 (E.D. La. 9/24/92) (A state public records claim implicates no federal constitutional or statutory rights).
[2] 28 U.S.C. § 2244(d)(1)(A).

3

process before she has proceeded through all available state courts, "the conviction becomes final when the time for seeking further direct review in the state court expires."³ After a petitioner has proceeded through all stages of direct appellate review in the state courts, the period of direct review also includes the petitioner's right to seek discretionary review before the United States Supreme Court. As a result, after a ruling by the state's highest court on direct appeal, a petitioner's judgment becomes final when the United States Supreme Court issues a decision denying discretionary review or, if no application for review is made, upon the conclusion of the 90-day time period for seeking such review.⁴

Upon the finality of a petitioner's conviction, the one-year limitations period for filing a federal habeas corpus petition commences to run. The federal limitations statute provides, however, that the time during which a subsequent "properly-filed" application for state post-conviction or other collateral review is thereafter "pending" in the state courts with respect to the pertinent judgment or claim shall not be counted toward any part of the one-year limitations period.⁵ As a corollary to this rule, any time during which there are no properly-filed post-conviction or collateral review proceedings pending before the state courts does count toward the passage of the one-year period. To be considered "properly filed" for purposes of § 2244(d)(2), an application's delivery and acceptance must be in compliance with the applicable laws and rules governing filings.⁶ A state post-conviction relief application is considered to be "pending" (1) while it is before a state court for review and also (2) during the interval of time after a lower state court's disposition of an application (thirty days in the State of Louisiana, unless an *allowable*

---

³ *See Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003).
⁴ *See id.*
⁵ 28 U.S.C. § 2244(d)(2).
⁶ *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005), *citing Artuz v. Bennett*, 531 U.S. 4, 8 (2000).

extension is granted) while the petitioner is procedurally authorized by state law to file a timely application for further appellate review at the next level of state consideration.[7]

Petitioner's conviction became final on May 15, 2014, which was 90 days after the Louisiana Supreme Court denied review on appeal, and the last day he could have sought further review with the United States Supreme Court. Approximately 29 days of untolled time elapsed until Petitioner properly filed his application for post-conviction relief at the 19th Judicial District Court on June 13, 2014. The 19th Judicial District Court denied his application on December 23, 2014.

Thereafter, Petitioner filed a writ application with the First Circuit.[8] After rejecting Petitioner's original application, the First Circuit considered Petitioner's refiled application and issued an order denying the writ on February 10, 2016.[9] The statute of limitations remained tolled until the Louisiana Supreme Court denied Petitioner's writ application on June 5, 2017.

Another 248 days of untolled time elapsed between the Louisiana Supreme Court's writ denial on collateral review on June 5, 2017, and February 8, 2018, the date Petitioner filed the instant petition. Accordingly, less than a year elapsed (29+248=277 days), during which Petitioner did not have any properly-filed applications for post-conviction or other collateral review pending before the state courts, and the claims brought in Petitioner's original writ of habeas corpus in this Court (R. Doc. 1, 3) are timely.[10]

---

[7] *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001).
[8] The record does not contain Petitioner's initial brief to the First Circuit on collateral review.
[9] Respondents argue that the rejected application resulted in additional untolled time. However, Fifth Circuit precedent suggests that the First Circuit implicitly extended the return date because it considered the refiled application without rejecting it as untimely. *See Leonard v. Deville*, ---F.3d ---(5th Cir. 2020), 2020 WL 525560 (5th Cir. 5/3/2020); *Grillette v. Warden, Winn Corr. Ctr.,* 372 F.3d 765, 775 (5th Cir. 2004).
[10] While filed on different dates, R. Doc. 1 and 3 appear to be identical.

Petitioner's "Supplement Pro Se Brief Relator Post-Conviction Relief," which asserts three additional claims was filed on March 13, 2018, resulting in an additional 33 days of untolled time. The three claims brought in the supplemental brief are also timely, as less than a year elapsed (29+248+33=310) during which Petitioner did not have any properly-filed applications for post-conviction or other collateral review pending before the state courts.[11]

### III.   Exhaustion

Under 28 U.S.C. § 2254(b) and (c), a claimant seeking habeas corpus relief in federal court is required first to exhaust his claims by presenting them for review before the courts of the state in which he is confined.  The exhaustion requirement is satisfied only when a petitioner's claims have been properly presented to the state's highest court, either on direct review or on post-conviction attack.[12]  As a general rule, federal habeas corpus relief is available on a habeas petition only when all of the claims in the petition have been exhausted through the state courts.[13]  A district court may notice on its own motion a petitioner's failure to exhaust state court remedies.[14]

A habeas petitioner who has failed to properly present a federal constitutional claim to the state courts may nonetheless be considered to have "technically exhausted" his state remedies if the state courts are no longer available for a review of the claim because of a procedural bar.[15]  A claim is considered to be "technically exhausted" when state relief is no longer procedurally available in connection with the claim, without regard to whether the claim was actually exhausted

---

[11] The Court has analyzed the timeliness of Petitioner's claims under 28 U.S.C.A. §2244(d)(1) on a claim-by-claim basis. The Fifth Circuit has not squarely addressed this issue. However, the claim-by-claim approach is used by the Third Circuit (*Fielder v. Varner*, 379 F.3d 113 (3d Cir. 2004)) and other districts in this Circuit (*Ellis v. Quarterman*, 2008 WL 2963467 (S.D. Tex. July 30, 2008); *Gonzales v. Thaler*, 2011 WL 4471018 (N.D. Tex. Sept. 9, 2011); *Maldonado v. Thaler*, 662 F. Supp. 2d 648 (S.D. Tex. Sept. 24, 2009)).
[12] *Bufalino v. Reno,* 613 F.2d 568, 570 (5th Cir.1980).
[13] *Rose v. Lundy,* 455 U.S. 509, 510 (1982).
[14] *McGee v. Estelle,* 722 F.2d 1206, 1214 (5th Cir.1984).
[15] *See Busby v. Dretke,* 359 F.3d 708, 724 (5th Cir.2004).

by presentation before the state courts.[16] In such instance, where a petitioner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claim in order to meet the exhaustion requirement would now find the claim procedurally barred, then the claim is technically exhausted and procedurally defaulted in the state court.[17] Federal review of the claim is then precluded unless the petitioner can show that the applicable procedural rule is not regularly followed and "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[18]

**(A) Claim Regarding Admission of the Victim's Criminal Records**

The Louisiana Appellate Project was appointed to represent Petitioner on appeal. Counsel submitted an appellate brief asserting one assignment of error: sufficiency of the evidence. The First Circuit provided Petitioner with a briefing schedule for a *pro se* brief.[19] He was granted one extension of time to file his brief.[20] After the deadline passed, Petitioner filed a motion to file an untimely brief,[21] which was denied.[22] Due to Petitioner's failure to file a timely *pro se* brief, the First Circuit's opinion affirming the convictions only addressed the counseled, sufficiency of the evidence argument.

Petitioner's proposed *pro se* brief is not in the record, but he contends that he intended to argue that the trial court erred when it refused to admit the criminal records of the victim. Petitioner

---

[16] *See Coleman v. Thompson,* 501 U.S. 722, 732 (1991).
[17] *Nobles v. Johnson,* 127 F.3d 409, 420 (5th Cir.1997), *See also Magouirk v. Phillips,* 144 F.3d 348 (5th Cir.1998).
[18] *Jones v. Jones,* 163 F.3d 285, 296 (5th Cir.1998); *Nobles v. Johnson, supra,* 127 F.3d at 423 n. 33; *Williams v. Cain,* 125 F.3d 269, 276 (5th Cir.1997).
[19] R. Doc. 28-3, p. 36.
[20] R. Doc. 28-3, p. 44.
[21] R. Doc. 28-3, p. 64.
[22] R. Doc. 28-3, p. 63.

7

did not raise this claim in his application for post-conviction relief. As this claim was never presented to the Louisiana Supreme Court, either on direct or collateral review, it is unexhausted.

**(B) Ineffective Assistance of Counsel Claims in the Supplemental Petition (R. Doc. 6)**

Petitioner asserts three claims of ineffective assistance of counsel in his Supplement Pro Se Brief Relator Post-Conviction Relief (R. Doc. 6): failure to investigate the factual basis of an insanity plea, failure to enter a dual plea of "not guilty and not guilty by reason of insanity," and failure to challenge the admissibility of his statements to police. These claims were not raised in Petitioner's direct appeal nor were they raised in his application for post-conviction relief. As these claims have been raised for the first time on federal habeas review and were never presented to the Louisiana Supreme Court, they are unexhausted.

If Petitioner were to assert these unexhausted claims before the state courts in a second application for post-conviction relief, the state courts would reject the application as procedurally barred in reliance on La. Code Crim. Proc. Ann. art. 930.4(E), which states that a "successive application shall be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application," or in reliance on Article 930.8(A), which states that "[n]o application for post-conviction relief ... shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final...." Nor could Petitioner now seek review of these claims in either the First Circuit Court of Appeal or the Louisiana Supreme Court. *See* Uniform Rules, Courts of Appeal, Rule 4–3 ("An application not filed in the appellate court within the time so fixed or extended [by the District Court] shall not be considered, in the absence of a showing that the delay in filing was not due to the applicant's fault."); Supreme Court Rule X, § 5(a) ("An application seeking to review a judgment of the court of appeal ... after a denial of an application, shall be made within thirty days of the mailing of the notice of the original judgment of the court

of appeal"). Thus, Petitioner's claim regarding admission of evidence of the victim's criminal records, as well as the three ineffective assistance of counsel claims raised in R. Doc. 6 are procedurally defaulted and the Court, by extension, is barred from undertaking review.[23]

### IV. Standard of Review

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id*. *See also Williams v. Taylor*, *supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly

---

[23] The petitioner is hereby specifically instructed that this Report and Recommendation shall constitute notice to him that this Court is *sua sponte* raising the issue of procedural default and that the petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this Report. *See Magouirk v. Phillips, supra,* 144 F.3d at 359.

9

established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

V.      **Factual Background**

The facts, as accurately summarized in the decision of the Louisiana First Circuit Court of Appeal are as follows: On May 17, 2010, Officer Chad Montgomery with the Baton Rouge City Police Department was dispatched to the corner of Tennessee and East Grant Street around 1:45 p.m. to respond to a shooting. Upon arrival, he observed one victim, seventeen-year-old Demarcus Woods, lying on the sidewalk, bleeding from his head. Detective John Dauthier was called to investigate the shooting. He spoke with three witnesses, Jasmine Bowers, Adrienne Harris, and Christopher Slaughter, whose accounts of the event were fairly consistent. According to the witnesses, Demarcus and some other men were standing in front of a home on Tennessee Street when two vehicles pulled up. A gray or silver colored Chevrolet Caprice with large custom rims was driven by Petitioner, and a white Nissan Maxima with one spare tire was driven by Petitioner's girlfriend, Chiffonda Hampton. The witnesses stated that Hampton exited the vehicle and began an altercation with Demarcus. Hampton was pointing her finger in Demarcus's face and accusing him of spreading rumors that he had slept with her. Demarcus turned to Petitioner and asked, "why don't you get your girl?" Hampton pushed Demarcus, and he either "nudged" or pushed her back. When he did so, Petitioner pulled out his gun from the back of his pants, aimed at Demarcus's forehead, and shot him. Petitioner then began "wild firing" at the crowd of people as they ran away, hitting Antonio Switzer in his back and Derek Hughes in the back of his leg.

Petitioner left the scene and went to shower at the apartment where he had been staying. The man that Petitioner was staying with at the time said that Petitioner appeared "jumpy" and "on

edge" and that Petitioner told him that he "did something bad." None of the witnesses had seen Petitioner before the day of the shooting, but an anonymous source provided the license plate number for the Maxima. Investigating officers determined that both vehicles were registered to Hampton. Hampton was listed with Petitioner in police reports, and the two were apparently in a relationship. Petitioner's physical appearance matched that described by witnesses as the shooter, and a witness identified Petitioner in a six-person photo lineup. Based on this information, officers set up surveillance at Hampton's apartment, where they saw the white Maxima and arrested Petitioner when he arrived there in the gray Caprice.

After his arrest, Petitioner signed a *Miranda* rights form and participated in a recorded interview with Detective Gautier. Petitioner initially denied the shooting. Minutes after the interview concluded, Petitioner called Dauthier back into the room and said he wanted to tell him the truth because he had been praying and felt that the truth would "set him free." He explained that Hampton argued with Demarcus and pushed him. When Demarcus pushed Hampton, Petitioner intervened. He stated that he was outnumbered and did not know if the other people standing around would shoot at him. He told Dauthier that he shot three times, not aiming at anyone. However, seven shell casings were collected from the scene. Petitioner explained that if he had shot in the air instead someone may have shot at him. Although he admitted that he was shooting while people were running, he insisted that he shot in self-defense and was protecting his "old lady."

Demarcus died on May 21, 2010, due to the injuries he received the day of the shooting, namely, a single gunshot wound to the head and a bullet lodged in his brain. When Petitioner found out that Demarcus had died, he told Dauthier that he was lying before and that he did not shoot

11

anyone. He stated that he only said that he fired the shots because he was scared in the interview. However, within minutes, Petitioner recanted and admitted that he shot in self-defense.

## VI. Merits Review

### A. Claim 1: Conviction Obtained Using Inadmissible "Other Crimes" Evidence

At the close of the prosecution's case, Petitioner chose to take the stand and testify.[24] Petitioner testified on cross-examination that he did not have a pistol when he was arrested by sheriff deputies on April 19, 2010.[25] The defense objected to the use of "other crimes" evidence during a side bar conference.[26] On rebuttal, the state called Lieutenant Troy Banks, who arrested Petitioner on April 19, 2010.[27] Lieutenant Banks testified that Petitioner did, in fact, have a pistol in his possession when he was arrested.[28] After closing arguments concluded, the defense moved for a mistrial based on Lieutenant Banks' testimony about the pistol.[29] The trial court judge denied the motion, concluding that the probative value outweighed the prejudicial effect in light of Petitioner's unequivocal testimony that he did not have a weapon.[30]

Petitioner raised the issue in his post-conviction relief application, arguing that the state violated Louisiana's notice and procedural requirements for introduction of "other crimes" evidence. As to this claim, Petitioner presented purely state law arguments in his post-conviction application, with a passing reference to *Chapman v. California*[31] for the proposition that the error is not harmless. The trial court relied solely on state law when it dismissed this claim.[32]

---

[24] R. Doc. 28-2, p.47.
[25] R. Doc. 28-2, pp. 49-50.
[26] R. Doc. 28-2, p. 50.
[27] R. Doc. 28-2, pp. 70-74.
[28] R. Doc. 28-2, pp. 72-77.
[29] R. Doc. 28-2, pp. 130-13.
[30] R. Doc. 28-2, pp. 132-133.
[31] 386 U.S. 18 (1967).
[32] R. Doc. 28-3, p. 84.

Petitioner similarly presented purely state law arguments in his habeas petition on this issue.[33] It appears that this claim is procedurally defaulted because Petitioner failed to raise a federal issue at the state level.[34] However, to the extent Petitioner's post-conviction application and habeas petition can be construed to state a federal claim, the claim fails on the merits.

Habeas review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law.[35] Federal courts do not sit to review the propriety of state-court evidentiary rulings unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair.[36]

After thorough review of the record, the Court concludes that the trial court's decision that the probative value outweighed the prejudicial effect was not unreasonable under federal law. "If a defendant testifies, he puts his credibility in issue. If he lies in the course of his testimony, he lays himself open to attack by means of illegal evidence which otherwise the prosecution could not use against him."[37] Here, Petitioner's testimony that he was not in possession of a weapon when he was arrested raised an issue of his credibility that was fairly open to rebuttal by the state. Under these circumstances, the admission of this evidence of prior bad acts by the state court was

---

[33] R. Doc. 1-1, pp. 6-7.
[34] *See Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991) (holding complaints regarding the admission of evidence under California law did not present grounds for federal habeas relief absent a showing that admission of the evidence in question violated due process); *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990) (recognizing that federal habeas relief will not issue for errors of state law); *Pulley v. Harris,* 465 U.S. 37, 41 (1984) (holding a federal court may not issue the writ on the basis of a perceived error of state law); *Goodrum v. Quarterman,* 547 F.3d 249, 261 (5th Cir.2008) (" 'it is not the province of a federal habeas court to reexamine state court determinations on state-law questions' such as the admissibility of evidence under state procedural rules").
[35] *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991); *Gonzales v. Thaler,* 643 F.3d 425, 429 (5th Cir.2011); *Jernigan v. Collins,* 980 F.2d 292, 298 (5th Cir.1992).
[36] *Lisenba v. People of the State of California,* 314 U.S. 219, 236–37 (1941); *Peters v. Whitley,* 942 F.2d 937, 940 (5th Cir.1991) (Habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right.)
[37] *Williams v. Wainwright,* 502 F.2d 1115, 1116 (5th Cir.1974).

neither contrary to, nor an unreasonable application of, federal law. Petitioner is not entitled to federal habeas corpus relief on this claim.

### B. Claims 2 & 3: Ineffective Assistance of Counsel

To establish that his legal representation at trial fell short of the assistance guaranteed by the Sixth Amendment, a convicted defendant must meet the two-pronged test set forth by the Supreme Court in *Strickland v. Washington*.[38] The defendant must show that his counsel's performance was both deficient (that counsel did not provide reasonably effective assistance under prevailing professional norms) and prejudicial (that errors by counsel "actually had an adverse effect on the defense").[39] The former component of the test authorizes only "highly deferential" judicial scrutiny, requiring the defendant to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.[40] As to the latter component, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Rather, the defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[41]

A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance.[42] The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[43]

---

[38] 466 U.S. 668 (1984).
[39] *See Anderson v. Collins*, 18 F.3d 1208, 1215 (5th Cir. 1994) (citing *Strickland*, 466 U.S. at 686-89, 693).
[40] *See Anderson*, 18 F.3d at 1215 (citing *Strickland*, 466 U.S. at 689).
[41] *See Anderson*, 18 F.3d at 1215 (citing *Strickland*, 466 U.S. at 693).
[42] *See Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citing *Strickland*, 466 U.S. at 689).
[43] *See Richter*, 562 U.S. at 104 (*citing Strickland*, 466 U.S. at 687).

**(i)    Claim 2**

In Claim 2, Petitioner contends that he received ineffective assistance of counsel because his counsel's closing argument contradicted Petitioner's trial testimony. Particularly, Petitioner contends that the following statement by defense counsel undercut his self-defense theory:

> Chistof goes over there, behind this woman, Chiffonda…where is Chiffonda? Christof goes over there, where every one of these men is strategically located to protect that house.

Petitioner argues that he testified that he was already at the scene when Chiffonda arrived and counsel's statements to the contrary made him appear to be the aggressor.[44] Petitioner raised this claim in his application for post-conviction relief. The trial court concluded:

> In the instant case, trial counsel gave a lengthy closing which illustrated the evidence presented for provocation and also the evidence pointing to self-defense. Petitioner cannot show that trial counsel's performance was deficient. Instead, it appears that petitioner was just not happy with the outcome.[45]

Petitioner has not demonstrated that his counsel's passing reference in a lengthy closing argument to the order in which he arrived at the scene was not reasonably effective under prevailing professional norms. Every witness that recalled the sequence of events, except Petitioner, testified that Petitioner arrived at the scene shortly after Chiffonda Hampton.[46] In any event, Petitioner cannot demonstrate that his counsel's remarks were prejudicial.

Petitioner contends that his counsel's remark that he arrived at the scene "behind Chiffonda" made him appear to be the aggressor and undercut his theory of self-defense or defense of others. However, there was ample evidence, including Petitioner's own testimony, that he was not acting in self-defense or defense of Chiffonda Hampton when he shot the victims. Every eye-

---

[44] R. Doc. 1-1, pp.8-10.
[45] R. Doc. 28-3, p. 86.
[46] Adrienne Harris (R. Doc. 28-1, p. 73); Jasmine Bowers (R. Doc. 28-1, p. 90); Derrick Hughes (R. Doc. 28-1, p. 124-126); Christopher Slaughter (R. DOC. 28-1, p. 152).

15

witness testified that Petitioner was the only person at the scene with a firearm.[47] Jasmine Bowers, Anotonio Switzer, and Derrick Hughes all testified that no one threatened Petitioner or Chiffonda Hampton.[48]

Petitioner admitted on cross-examination that he shot all three victims,[49] no one shot at him,[50] and he did not see any guns.[51] He admitted that he shot an unarmed man in the head[52] from 12 inches away.[53] Petitioner testified that the only reason that he shot was because he thought the people at the scene might have guns.[54]

In light of the overwhelming evidence that Petitioner did not act in self-defense, Petitioner cannot demonstrate that, but for his counsel's passing reference in closing argument about arriving at the scene after Chiffonda Hampton, he would not have been convicted. Claim 2 is without merit and should be dismissed.

### (ii) Claim 3

In Claim 3, Petitioner contends that he received ineffective assistance of counsel because his counsel failed to move for a special jury instruction regarding "other crimes" evidence. Petitioner raised this claim in his application for post-conviction relief. The trial court concluded:

> Petitioner's claim that trial counsel was ineffective for not moving for a special jury instruction pertaining to other crimes evidence is also without merit. The introduction of other crimes evidence was introduced to impeach the petitioner after he took the stand and testified, thus a special instruction was not applicable. Moreover, the petitioner can not show that he was prejudiced because of the trial counsel's deficient performance.

---

[47] Adrienne Harris (R. Doc. 28-1, p. 79); Jasmine Bowers (R. Doc. 28-1, p. 96); Antonio Switzer (R. Doc. 28-1, p. 113); Derrick Hughes (R. Doc. 28-1, p.130)
[48] Jasmine Bowers (R. Doc. 28-1, p. 96); Antonio Switzer (R. Doc. 28-1, p. 113); Derrick Hughes (R. Doc. 28-1, p.130)
[49] R. Doc. 28-2, pp.60-61.
[50] R. Doc. 28-2, pp.61, 68.
[51] R. Doc. 28-2, pp. 65, 68.
[52] R. Doc. 28-2, p.59.
[53] R. Doc. 28-2, p. 67.
[54] R. Doc. 28-2, pp. 67-8.

> The record is clear that several eyewitnesses testified that petitioner was the shooter, and petitioner himself testified that he shot, albeit, in self-defense. Also, the record shows that trial counsel made sure to elicit testimony that petitioner was never convicted of possession of the pistol. Thus, petitioner cannot show that the outcome would have been different if trial counsel would have asked for a special jury instruction on the testimony regarding the arrest for possession of a pistol.[55]

"Improper jury instructions in state criminal trials do not generally form the basis for federal habeas relief."[56] Instead, "the error must be so egregious as to rise to the level of a constitutional violation or so prejudicial as to render the trial itself fundamentally unfair."[57]

Considering the overwhelming evidence that Petitioner did not act in self-defense discussed above, Petitioner cannot show that the failure to request this jury instruction rendered his trial fundamentally unfair. Nor can he demonstrate that, but for his counsel's failure to request the instruction, there would have been a different outcome. Accordingly, Claim 3 is without merit and should be dismissed.

## VII.    Recommendation

For the reasons set forth herein, the undersigned **RECOMMENDS** that Petitioner's application for habeas corpus relief be **DENIED** as untimely and that this proceeding be **DISMISSED WITH PREJUDICE**.

---

[55] R. Doc. 28-3, p. 86.
[56] *Tarpley v. Estelle*, 703 F.2d 157, 159 (5th Cir. 1983) (citing *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)).
[57] *Baldwin v. Blackburn*, 653 F.2d 942, 951 (5th Cir. 1981) (quoting *Bryan v. Wainwright*, 588 F.2d 1108, 1110-11 (5th Cir. 1979)).

**IT IS FURTHER RECOMMENDED** that, if Petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on March 11, 2021.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**